372 February 19, 2026 No. 131

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KYLE JAMES MECHAM,
*Defendant-Appellant.*

Crook County Circuit Court
23CR25788; A183477

Wade L. Whiting, Judge.

Submitted December 4, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Carla E. Edmondson, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Adam Holbrook, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, advancing two assignments of error. In his first assignment, defendant argues that the trial court erred by overruling his objection to the admission of testimony by a detective that the symptoms used in the drug recognition evaluation (DRE) protocol are the same symptoms used by those in the medical field to determine whether a person is ill or impaired. In his second assignment, he argues that the court erred by refusing to give Uniform Criminal Jury Instruction (UCrJI) 1030, the less-satisfactory-evidence instruction, when the state chose not to present the detective's body-camera recording of the DRE evaluation. We agree with the state that any error in admitting the challenged testimony was harmless and that the court did not err in failing to give the requested instruction. We therefore affirm.

Defendant was pulled over after Officer Yanes saw him driving a truck with expired tags. Yanes, who knew defendant from previous contacts with him, observed physical signs—clammy skin; sweating despite the cold, windy weather; a dazed or sleepy demeanor; and pupils that were "overly dilated" and did not constrict with light—that led Yanes to believe that defendant was impaired, and he asked defendant to get out of the vehicle. During the ensuing investigation, a "tooter"—*i.e.*, a straw or pen casing for smoking heroin or fentanyl—fell from defendant's pocket, and defendant admitted that he had smoked fentanyl before the stop; he later admitted to Yanes that he would use methamphetamine to "balance himself out" after smoking fentanyl. Yanes administered field sobriety tests, concluded that defendant was under the influence of intoxicants, and arrested him. At the county jail, defendant provided a urine sample, which ultimately tested positive for methamphetamine, fentanyl, and metabolites of those drugs. Defendant also agreed to submit to a DRE at the jail, which was conducted by Detective Zamora and included, among other tests, a walk-and-turn test and a one-leg stand test; he also checked defendant's vital signs. During that evaluation,

defendant admitted that he used methamphetamine and fentanyl, and that he had last used fentanyl a couple of hours before the stop. He told Zamora that he smoked about 5 to 10 pills a day, although he did not say how many he had smoked that day. Zamora concluded that defendant showed poor coordination and was impaired. Based on the totality of his observations, Zamora concluded that defendant was under the influence of a central nervous stimulant, such as methamphetamine.

At trial, the state first presented testimony from Yanes regarding his training and experience on DUII stops and conducting field sobriety tests, his observations of defendant, and his conclusion that defendant was impaired to a perceptible degree from controlled substances; it also presented bodycam footage from Yanes that included defendant's admissions to using drugs and showed defendant during those field sobriety tests.

The state then offered testimony from Zamora. During that testimony, and over defendant's objection, Zamora answered affirmatively when asked whether the DRE protocol employed "the same symptoms and DRE symptomology that's used by medical professionals for purposes of determining whether a patient is ill versus under the influence of intoxicants." The prosecutor then continued to question Zamora about his administration of the DRE and his conclusion that defendant was impaired by controlled substances, but the state did not offer into evidence the bodycam footage of the DRE. On cross-examination, Zamora acknowledged that he had not asked defendant about "his most recent meth use."

Based on the state's choice not to offer Zamora's bodycam footage, as well as the fact that defendant had not been asked about the last time that he had used methamphetamine, defendant requested that the court give UCrJI 1030, the "less satisfactory evidence" instruction. That instruction provides:

> "The state has the burden to establish the guilt of the defendant beyond a reasonable doubt. When you evaluate the state's evidence, you may also consider the power of the state to gather and produce evidence. If the evidence

offered by the state was weaker and less satisfactory than other stronger or more satisfactory evidence that the state could have offered, then you should view the weaker and less satisfactory evidence with distrust."

The court refused to give the instruction, on the ground that there was nothing in the record to give rise to an inference that "the State's trying to hide something by not showing that evidence."

The jury ultimately found defendant guilty, and he now appeals the resulting judgment. In his first assignment of error, he contends that the court erred by overruling his objection to Zamora's testimony that the DRE protocol uses "the same symptoms and DRE symptomology that's used by medical professionals for purposes of determining whether a patient is ill versus under the influence of intoxicants." According to defendant, Zamora's specialized knowledge about evaluating symptoms within the DRE protocol did not qualify him to testify about how the same symptoms are evaluated in the medical field. The state responds that the court did not err in admitting the testimony but that, in any event, the admission of that testimony was harmless.

We do not address the merits of the parties' arguments regarding admissibility of the challenged testimony because we agree with the state that any error would have been harmless. *See State v. Gibson*, 338 Or 560, 576, 113 P3d 423, *cert den*, 546 US 1044 (2005) ("Article VII (Amended), section 3, [of the Oregon Constitution] requires an appellate court to affirm a conviction, notwithstanding any evidentiary error, if there is little likelihood that the error affected the verdict."). The jury more than once heard testimony, without objection from defendant, that the DRE protocol was accepted by the medical community. Immediately before the challenged testimony, Zamora had been asked, "And based on your training and experience, do you know where the DRE symptomatology or indicators has its foundations?" Zamora responded, without objection from defendant, "From law enforcement, the medical field." And later, again without objection from defendant, Zamora responded affirmatively when asked "whether this program [the DRE] has found general acceptance in the medical and scientific community."

To the extent that the jury would have appreciated a difference between the unchallenged testimony about the medical profession *accepting* the DRE and the challenged testimony about medical professionals *using* the same symptoms and symptomology as the DRE, there is little likelihood that it would have affected the jury's verdict. That is particularly true where there was so much additional evidence of defendant's impairment that did not depend on the DRE or its medical basis, including defendant's admissions about smoking fentanyl and taking methamphetamine to balance himself out; the positive drug test results; testimony from Yanes that defendant's face and skin were clammy, that he was sweating on a cold, windy night, that he appeared overly relaxed, had overly dilated pupils that did not constrict with light, and that he performed poorly on the field sobriety tests, including the "walk and turn" test; Yanes's testimony that defendant's demeanor on the night in question was different from when he had seen him on prior occasions when he was not under the influence of controlled substances, and that it was "obvious" to Yanes that defendant was under the influence of controlled substances; and the video footage from Yanes's bodycam, which would have allowed the jurors to assess defendant's performance on the "walk and turn" test for themselves. Thus, we reject defendant's first assignment.

In his second assignment, defendant argues that the trial court was required to give his requested less-satisfactory-evidence instruction, UCrJI 1030, because the state had stronger and more satisfactory evidence available in the form of Zamora's bodycam footage but chose not to present it. Defendant's argument has two components. First, he argues that the rule applied by the trial court—that the less-satisfactory-evidence instruction is proper only when it appears that a party is trying to hide something—derives from a line of Court of Appeals cases beginning with *State v. McNassar*, 77 Or App 215, 712 P2d 170, *rev den*, 300 Or 704 (1986), that are plainly wrong and should be overruled. Second, he argues that, even if the court were to adhere to *McNassar*, defendant was still entitled to the instruction because the record permits an inference that the video would have been adverse to the state. For the reason discussed below, we reject both of those arguments because

defendant's proposed instruction was not a correct statement of law in this circumstance.

Defendant's arguments are foreclosed by *State v. Wildeboer*, 338 Or App 404, 417, 566 P3d 1149, *rev allowed*, 374 Or 188 (2025), which was decided after defendant filed his opening brief. In *Wildeboer*, the defendant in a DUII case argued that the trial court was required to give UCrJI 1030 in a circumstance in which the police had obtained a urine sample but not a blood draw. *Id.* at 409. The defendant contended that the presumption described in UCrJI 1030 and drawn from ORS 10.095(8) applied whenever a party failed to gather superior and more satisfactory evidence in the past. *Id.* at 412. We held that the defendant's construction of ORS 10.095(8) could not be reconciled with our holding in *McNassar* that "a party need not conduct every possible test that could provide marginally better information or face a less-satisfactory-evidence instruction, as long as its decision not to conduct the test was reasonably based on legitimate considerations." *Id.* We declined to overrule *McNassar* in that regard and therefore held that UCrJI 1030 was not a correct statement of the law, because it "would have permitted the jury to find that the presumption stated in ORS 10.095(8) applies any time that the state could have gathered 'superior and more satisfactory' evidence in the past without regard to the state's reasons for not gathering that evidence." *Id.* at 417-18. "For that reason alone, defendant's requested instruction was not legally correct, and the trial court did not err in declining to give it." *Id.* at 418.

In this case, although defendant's arguments on appeal focus on the failure to produce Zamora's bodycam footage, he also sought the instruction based on the state's failure to gather evidence related to methamphetamine use—that "nobody asked my client when the last time he did meth was, they could have gathered that evidence" but did not. In light of our conclusion in *Wildeboer*, defendant's requested instruction was not legally correct and would have permitted the jury to apply the presumption without regard to the state's reasons for not gathering the evidence, and the trial court did not err by declining to give it.

Affirmed.